# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **LARRY ANDRE PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-cv-00300** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgement on the Administrative Record. Docket No. 8. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 9. Plaintiff has filed a Reply. Docket No. 12.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

1

Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on October 25, 2006, alleging that he had been disabled since October 10, 2006, due to human immunodeficiency virus (HIV) infection, mental problems, cocaine addiction, ulcers, and hemorrhoids.  *See, e.g.,* Docket No. 6, Attachment ("TR"), pp. 10, 64, 111-16.  Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 64).  Plaintiff subsequently requested (TR 73) and received (TR 55) a hearing.  Plaintiff's hearing was conducted on December 21, 2010, by Administrative Law Judge ("ALJ") David A. Ettinger.  TR 22.  Plaintiff and Vocational Expert, Pedro Roman, appeared and testified.  *Id.*

On April 25, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 7-17.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant has not engaged in substantial gainful activity since October 25, 2006, the application date (20 C.F.R. 416.971 *et seq.*)
>
> 2.  The claimant has the following severe impairments: human immunodeficiency virus (HIV) infection, alcohol dependence, antisocial personality disorder, borderline intellectual functioning, and depressive disorder (20 C.F.R. 416.290(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that

2

he cannot carry out complex or detailed instructions.

5.   The claimant has no past relevant work (20 C.F.R. 416.965).

6.   The claimant was born on April 15, 1959 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 416.963).

7.   The claimant has at least a high school education or the equivalent, and his is able to communicate in English (20 C.F.R. 416.964).

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 25, 2006, the date the application was filed (20 C.F.R. 416.920(g)).

TR 12-17.

On June 3, 2011, Plaintiff timely filed a request for review of the hearing decision.  TR 105-08.  On January 24, 2012, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III.  CONCLUSIONS OF LAW

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the

4

Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

5

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*,

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) failing to solicit testimony from a medical expert and therefore failing to fully develop the record; 2) failing to consider the record as a whole, thereby improperly determining that Plaintiff's impairments did not meet or medically equal Listings 12.05B, 12.05C,[3] 14.08A, and/or 14.08I; and 3) improperly evaluating Plaintiff's credibility. Docket No. 8-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

---

[3] Plaintiff contends that he meets Listing 12.04C, which he described as "Full Scale IQ of 60 to 70 with a physical impairment that imposed significant work related limitations of functioning." Docket No. 8-1. The undersigned notes, however, that Listing *12.05C* corresponds to this description, while *12.04C* refers to a medically documented history of chronic affective disorder. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listings 12.04C and 12.05C. Because Plaintiff advances arguments regarding his IQ level and does not assert that he suffers from chronic affective disorder (Docket No. 8-1), the undersigned will address Plaintiff's contentions regarding listing 12.05C rather than 12.04C.

7

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Medical Expert Testimony and Development of the Record

Plaintiff contends that the ALJ erred in not soliciting testimony from a medical expert, and therefore failed to fully develop the record. Docket No. 8-1. Specifically, Plaintiff maintains that a medical expert should have appeared and testified regarding Plaintiff's low IQ scores, and that the ALJ failed to properly consider those low IQ results. *Id.* Plaintiff further argues that the ALJ provided limited and biased information to Dr. Deborah Doineau prior to her post-hearing mental consultative examination, specifically excluding medical reports from the VA Medical Center and examination notes from Dr. Thelma Foley. *Id.* Plaintiff additionally asserts that Mr. Robert Doran, a Psychological Examiner, was biased in his assessment of Plaintiff's mental abilities. *Id.*[4]

Defendant responds that, while an ALJ may ask for medical expert testimony in making his decision, such testimony is not necessary when, as in the instant case, the ALJ has adequate evidence regarding the nature and severity of Plaintiff's conditions upon which to base his decision. Docket No. 9. Specifically, Defendant argues that the ALJ had an adequate basis for discounting Plaintiff's low IQ scores because they were invalid and therefore could not be used

---

[4] Plaintiff's Reply does not address this statement of error. *See* Docket No. 12.

8

to establish disability, and that the ALJ had enough evidence before him regarding the nature and severity of Plaintiff's conditions to render a reasoned decision such that he did not need to solicit additional evidence. *Id.*

Although Plaintiff correctly asserts that the ALJ must fully develop the record, Plaintiff fails to show that the ALJ's decision not to solicit medical expert testimony resulted in a non-fully developed record.

The Regulations outline the following guidelines regarding the ALJ's solicitation of medical expert testimony:

> Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart. When administrative law judges consider these opinions, they will evaluate them using the rules in paragraphs (a) through (e) of this section.

20 C.F.R. § 404.1527(f)(2)(iii).

As can be seen, an ALJ *may* seek additional medical expert testimony to inform his decision, but there is no requirement that the ALJ do so. *See id.* Moreover, soliciting a consultative examination and/or medical expert testimony is appropriate when, in order to reach a reasoned decision, the ALJ needs "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, [and] a diagnosis or prognosis." *See, e.g.,* 20 C.F.R. §404.1519a(a)(2). As will be discussed in greater detail below, the ALJ in the case at bar had sufficient evidence before him regarding the nature and severity of Plaintiff's conditions that he did not need to solicit medical expert testimony in order to render an appropriate decision that was supported by substantial evidence. Thus, the ALJ was not required to solicit medical expert

9

testimony, and Plaintiff's argument on this point fails.

Furthermore, as will be demonstrated below, the ALJ in the case at bar properly considered the medical evidence and expert opinions of record regarding the nature and severity of Plaintiff's impairments.

As noted, Plaintiff argues that Mr. Doran's opinion was biased because he concluded in 2007 and 2008 that Plaintiff had only mild mental limitations and because he determined that Plaintiff's low IQ scores were invalid due to Plaintiff's lack of effort. Docket No. 8-1, *citing* TR 284-87, 302-05. The ALJ discussed both of these examinations, stating:

> On July 24, 2007, the claimant was seen by Mr. Robert Doran. The claimant drove himself to the appointment and apparently had a conflict with Mr. Doran over where to park his vehicle. The claimant obtained extremely low scores on the Wechsler Adult Intelligence Scale – Third Edition and on the Wechsler Memory Scale – Third Edition, but Mr. Doran considered the scores invalid due to the claimant's lack of effort.

> Only July 24, 2008, the claimant was again seen by Mr. Doran. The claimant reported that he smoked two packs of cigarettes per day, but denied any history of alcohol abuse. He denied any cocaine use since June 2007. He had been released from prison on June 15, 2008. The claimant was evasive and did not put forth his best effort. He was euthymic and had poor insight, judgement, and impulse control. He was estimated to have low average intelligence. The claimant was diagnosed with an antisocial personality disorder and rated at 60 on the Global Assessment of Functioning scale. Mr. Doran concluded that the claimant had only mild mental limitations.

TR 15, *citing* TR 284-87, 302-05.

Despite Plaintiff's assertions to the contrary, there is simply no evidence in the record to substantiate Plaintiff's claim that Mr. Doran was biased against him. Mr. Doran properly discounted IQ scores that were based upon examinations where Plaintiff did not put forth

appropriate effort during testing (*see, e.g., Shepherd v. Sullivan*, 889 F.2d 1088 (6th Cir. 1999)), and invalid IQ scores cannot provide a basis for a finding of disability (*see* 20 C.F.R., Part 404, Subpart P, 12.00D(6)).

Plaintiff also argues that the ALJ improperly provided limited and biased information to Dr. Deborah Doineau prior to her mental consultative examination, specifically excluding medical reports from the VA Medical Center and examination notes from Dr. Thelma Foley. On March 4, 2011, following Plaintiff's hearing but prior to the ALJ's rendering his decision, Dr. Doineau performed a consultative psychological examination of Plaintiff. TR 507-19. Dr. Doineau's notes explicitly indicate that she was aware of his treatment at the VA Medical Center and Dr. Foley's examination:

> . . . Documents provided by Social Security were reviewed. These included two of CE evaluations by Mr. Doran dating back to 2007 and 2008. In 2007, he was found to have failed to perform his best on psychological tests and in 2008 he was diagnosed with antisocial personality disorder. He was also evaluated by [Dr. Foley] in 2007 and at that time, he was diagnosed with alcohol and cocaine dependence.
>
> . . .
>
> . . . After discharge from the military, he saw a psychiatrist at the Veterans Administration Hospital in Nashville. . . .
>
> . . .
>
> . . . He went through a treatment program once at VA Hospital in Murfreesboro for 30 days followed by and extended stay at a VA Facility in Johnson City, Tennessee.

TR 507-08.

As can be seen, when reviewing Plaintiff's medical history, Dr. Doineau noted Plaintiff's treatment at VA facilities and Dr. Foley's findings. The above also indicates that Dr. Doineau

11

reviewed Mr. Doran's findings.

Regarding Dr. Doineau's evaluation, the ALJ stated:

> On March 4, 2011, the claimant was evaluated by Dr. Deborah
> Doineau. He smelled of alcohol and acknowledged having one
> beer prior to his noon appointment. He was insistent that he had
> had just one beer and was completely sober. He complained of
> memory loss and again reported a head injury at age ten. He
> denied any use of drugs, other than alcohol, for the past eighteen
> months. He was vague regarding his alcohol use. He reported
> smoking three to five packs of cigarettes per day. He reported
> obtaining a GED while incarcerated. He stammered sometimes.
> He stated that he could not do serial subtraction of seven or three.
> He could identify the similarity between an apple and a banana and
> reported no audio hallucinations. His intelligence was estimated to
> be in the borderline range. The claimant described a wide range of
> daily activities. The claimant scored in the deficient range on the
> Wechsler Adult Intelligence Scale – Fourth Edition. He was not
> particularly interested in the test, attention and concentration were
> below average, and persistence and motivation waxed and waned.
> Dr. Doineau determined that the scores were invalid. The claimant
> obtained very low scores [o]n the Wide Range Achievement Test –
> Fourth Edition. His effort was questionable, and the results were
> inconsistent with the claimant having obtained a GED. Again, Dr.
> Doineau concluded that the scores were invalid. Her diagnosis
> was depressive disorder, alcohol dependence, and antisocial
> personality traits. She believed that the claimant was moderately
> to markedly limited in performing complex work, moderately
> limited in carrying out simple instructions, and moderate[ly]
> limited in the ability to adapt to changes in a work setting.

TR 15, *citing* TR 507-19.

The ALJ discussed Dr. Doineau's findings and was aware of the medical history

documents she reviewed. There is nothing in the record to indicate that she based her opinion on

an incomplete or biased account of Plaintiff's medical history. Plaintiff's argument fails.

The ALJ properly analyzed Mr. Doran's and Dr. Doineau's findings when assessing the

severity of Plaintiff's mental limitations. *See* TR 15-16. In addition to his determination that the

12

low IQ scores were inconsistent with Plaintiff having obtained his GED (TR 15), the ALJ explained:

> As noted above, Dr. Foley concluded that the claimant could perform simple work; Mr. Doran found only mild limitations; and Dr. Doineau excluded complex work and found moderate limitation on the ability to carry out simple instructions. A State agency mental health consultant concluded that the claimant has no severe impairments. I do not find a credible basis in the evidence for Dr. Doineau's opinion that the claimant would be moderately limited in the ability to carry out simple instructions. I generally give greater weight to the opinions of the three examining mental health experts that to the nonexamining State agency consultant. I find that the claimant is unable to carry out either complex or detailed instructions, but he can perform simple work.

TR 16, *citing* TR 288-301.

The quoted passages above demonstrate that the ALJ properly considered Mr. Doran's and Dr. Doineau's opinions and findings in accordance with the criteria set forth in the Regulations.

The ALJ properly considered the medical evidence and expert opinions of the record and reached a reasoned decision. The Regulations do not require more. Accordingly, Plaintiff's argument fails.

## 2. Meeting or Equaling a Listing

Plaintiff contends that the ALJ failed to consider the record as a whole, thereby improperly determining that he does not meet or medically equal Listings 12.04C, 12.05B, 14.08A, and/or 14.08I. Docket No. 8-1. Specifically, Plaintiff maintains that his low IQ scores are sufficient to meet the requirements of Listings 12.05B and 12.05C, and that his weight loss, chronic MRSA infections, and hospital treatment are sufficient to meet the requirements of Listings 14.08A and 14.08I. *Id.*; Docket No. 12. Plaintiff argues that the ALJ improperly

13

analyzed the evidence and erred in determining that these infections and hospitalizations occurred on a limited basis. *Id.*

Defendant responds that the ALJ properly determined that Plaintiff's impairments do not meet or medically equal the requisite criteria for these Listings. Docket No. 9. Specifically, Defendant argues that Plaintiff failed to show that he meets any of the criteria for Listing 14.08 because does not have opportunistic infections and he has asymptomatic HIV status. *Id*. Defendant maintains that the ALJ adequately explained why Plaintiff did not satisfy the criteria for Listing 12.04. *Id.* Defendant further contends that Listing 12.05 is not plausibly relevant to this case and that the ALJ is not required to discuss listings for which there is no evidence that they could be met or equaled. *Id.*

Plaintiff replies that the opinion rendered by nonexamining State agency medical examiner, Dr. Downey, was incomplete because the VA records that document Plaintiff's recurrent MRSA abscesses and low BMI of 18.5 were not available at the time Dr. Downey reviewed the file. Docket No. 12. Plaintiff also replies that Plaintiff's HIV related symptoms were "clearly well documented in the VA records," and argues that the VA records establish that Plaintiff meets the Listing requirements of 14.08A and I. *Id.*

With regard to Listing 12.05, "Mental Retardation," the Code of Federal Regulations states:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

14

. . .

     B.  A valid verbal, performance, of full scale IQ of 59 or less; OR

     C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function.

. . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listings 12.05B and 12.05C.

     As can be seen, the Regulations explicitly state that low IQ scores must be valid in order to satisfy the listing criteria. As explained above, however, both Mr. Doran and Dr. Doineau invalidated Plaintiff's low scores due to Plaintiff's lack of appropriate effort, and the ALJ properly accepted those invalidations. TR 15-16. Plaintiff, therefore, cannot rely on these scores to support his argument that he meets or medically equals the criteria of Listings 12.05B and 12.05C.

     With regard to Listing 14.08, "Human Immunodeficiency Virus (HIV) Infection," the Regulations state:

     14.08 *Human immunodeficiency virus (HIV) infection*. With documentation as described in 14.00F and one of the following:

     A.  Bacterial infections:

          1.  Mycobacterial infection (for example, caused by *M. Avium-intracellulare*, *M.kansasii*, *M. tuberculosis*) at a site other than the lungs, skin, or cervical of hilar lymph nodes, or pulmonary tuberculosis resistant to treatment; or

          2.  Nocardiosis; or

          3.  *Salmonella* bacteremia, recurrent non-typhoid; or

          4.  Multiple or recurrent bacterial infections, including

15

> pelvic inflammatory disease, requiring hospitalization or
> intravenous antibiotic treatment three or more times in a
> 12-month period; or
>
> . . .
>
> I.  Diarrhea, lasting for 1 month or longer, resistant to treatment,
> and requiring intravenous hydration, intravenous alimentation,
> or tube feeding
>
> . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listings 14.08A and 14.08I.

As a preliminary matter, Plaintiff's contention that his weight loss is proof that he meets

Listings 14.08A or 14.08I is unavailing because weight loss is not among the criteria set forth

above.  *See id.*

Regarding Plaintiff's MRSA infections, the ALJ discussed Plaintiff's history and

ultimately determined that it did not meet the requirements of Listing 14.08 (TR 12):

> The claimant has received inpatient treatment from January 30,
> 2009, to February 2, 2009 for a left hip abscess with MRSA
> infection.  No MRSA infection was detected on February 4, 2009.
> The claimant was again hospitalized from June 27, 2009, to June
> 29, 2009, for MRSA abscesses of the chin and left hip.  The
> claimant was first seen the in VA psychiatric clinic on July 16,
> 2009.  Although he presented seeking secondary gain, he appeared
> likely to benefit from antidepressant and/or substance abuse
> treatment.  On July 20, 2009, the claimant had an intake
> appointment with the substance abuse treatment program:
> "presents after consulting with his lawyer for disability who
> explained to Vet, 'It will really help our case if you start going
> back to the psychiatrist.'" The claimant tested positive for cocaine
> on July 20, 2009, and on July 28, 2009.  The claimant had no
> MRSA recurrence when seen on August 6, 2009.  It appears that
> he was not seen again until August 23, 2010[,] when he came to
> the emergency room requesting medication and nutritional
> supplement refills.  On September 23, 2010, the claimant was
> described as a new patient recently released from prison.

16

TR 14, *citing* TR 306-506.

As can be seen, the ALJ recounted Plaintiff's medical records regarding MRSA infections. The above indicates that Plaintiff's hospitalizations for MRSA fall short of the requisite three times in a twelve month period; the ALJ's determination that Plaintiff did not meet the requirements of Listing 14.08A was, therefore, proper.

Regarding Listing 14.08I, the ALJ acknowledged that Plaintiff testified that "[h]e occasionally has diarrhea." TR 15. Occasional diarrhea is insufficient to meet the requisite severity and frequency of diarrhea in Listing 14.08I. The record contains neither objective medical evidence nor testimony to support the contention that Plaintiff's diarrhea lasted for at least one month, was resistant to treatment, or required intravenous treatment or tube feeding. Accordingly, the ALJ's determination that Plaintiff did not satisfy Listing 14.08I was proper.

The ALJ appropriately considered the medical evidence regarding Plaintiff's low IQ scores, MRSA infections, and diarrhea, and determined that "[Plaintiff did] not have an impairment or combination of impairments that meet or medically equals one of the listed impairments." TR 12. As explained above, the ALJ also properly analyzed the medical and expert opinion evidence of the record. Plaintiff's argument that the ALJ failed to consider the record as a whole when determining that Plaintiff's impairments neither met nor medically equaled a Listing is unavailing.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a Listing, the ALJ's decision must stand.

### 3. Subjective Complaints of Pain

17

Plaintiff contends that the ALJ did not abide by Social Security Ruling 96-7p, because he simply utilized "boilerplate language" when stating his credibility determination, and failed to actually conduct a proper evaluation regarding the credibility of Plaintiff's subjective complaints of pain. Docket No. 8-1. Plaintiff also contends that the ALJ proffered inconsistent statements and failed to mention supporting consistencies in the record. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility. Docket No. 9. Specifically, Defendant argues that Plaintiff's testimony regarding his drug and alcohol use was inconsistent with the evidence of record. *Id.* Defendant also responds that Plaintiff's failure to put forth his best effort during IQ testing undermines his credibility, as does his description of his daily activities. *Id.* Defendant additionally maintains that Plaintiff's testimony regarding his sleep schedule was inconsistent with medical reports regarding his daily activities, and notes that Plaintiff did not report severe fatigue to his doctors. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective complaints:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

18

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

Social Security Ruling 96-7p clarifies the evaluation of a claimant's subjective

complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929:

> **PURPOSE:** The purpose of this Ruling is to clarify when the
> evaluation of symptoms, including pain, under 20 C.F.R. 404.1529
> and 416.929 requires a finding about the credibility of an
> individual's statements about pain or other symptom(s) and its
> functional effects; to explain the factors to be considered in
> assessing the credibility of the individual's statements about
> symptoms; and to state the importance of explaining the reasons
> for the finding about the credibility of the individual's statements
> in the disability determination or decision. In particular, this
> Ruling emphasizes that:
>
> 1.  No symptom or combination of symptoms can be the basis for a
> finding of disability, no matter how genuine the individual's
> complaints may appear to be, unless there are medical signs and
> laboratory findings demonstrating the existence of a medically
> determinable physical or mental impairment(s) that could
> reasonably be expected to produce the symptoms.
>
> 2.  When the existence of a medically determinable physical or
> mental impairment(s) that could reasonably be expected to
> produce the symptoms has been established, the intensity,
> persistence, and functionally limiting effects of the symptoms
> must be evaluated to determine the extent to which the
> symptoms affect the individual's ability to do basic work
> activities. This requires the adjudicator to make a finding about
> the credibility of the individual's statements about the
> symptom(s) and its functional effects.
>
> 3.  Because symptoms, such as pain, sometimes suggest a greater
>  severity of impairment than can be shown by objective medical

evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4.  In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5.  It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

20

(*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible.  *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6ᵗʰ Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6ᵗʰ Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

524, 538 (6ᵗʰ Cir. 1981).

In the case at bar, the ALJ found that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above residual functional capacity assessment."  TR 14.  Despite Plaintiff's

contention that the ALJ simply used boilerplate language and failed to actually analyze his

credibility, the ALJ did articulate his specific rationale for discrediting Plaintiff's subjective

complaints.  The ALJ explained:

> The claimant testified that he is able to read a newspaper, has a
> driver's license, and is able to drive.  He last used alcohol
> sometime in 2007 and last used cocaine sometime in 2009.  He
> takes medicine for his HIV infection.  He is weak and normally
> sleeps until 1:00 p.m. or 3:00 p.m.  He sees a psychiatrist at the
> VA hospital but could not remember the name of his prescribed
> medication.  He occasionally has diarrhea.  Although he could lift
> fifty (50) to sixty (60) pounds regularly, he could stand not more
> than thirty (30) minutes during an entire day and could sit no more
> than thirty (30) minutes during an entire day.  He is forgetful.  He
> was incarcerated for selling cocaine and released on August 8,
> 2010.
>
> I do not credit the claimant's testimony.  He was glib in describing
> his limitations.  There is no indication in the medical records that
> the claimant has ever complained to treatment providers of fatigue
> so severe that he regularly sleeps past noon and cannot stand or sit
> up for more than thirty (30) minutes during an entire day.  The
> claimant's testimony that the had not used alcohol for four years is
> contrary to other evidence, and his testimony that he stopped using

21

> cocaine on the date of his last recorded positive urine drug screen
> is lacking in credibility particularly in the absence of any
> subsequent negative screens.

TR 15-16.

As can be seen, the ALJ's decision addresses Plaintiff's testimony and his subjective claims, and discusses why they are discredited. TR 15-16. It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claim (specifically, a history of low body weight (TR 14) and some alleged fatigue (TR 15)), the ALJ chose to rely on findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's

testimony was inconsistent with the evidence of record, as explained above. TR 15-16. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. CLIFTON KNOWLES
United States Magistrate Judge

23